# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOSEPH GARCIA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>M. LUNES, et al.,<br><br>　　　　　　Defendants.<br>_____/ | CASE NO. 1:06-cv-00167-AWI-GSA (PC)<br><br>ORDER DISMISSING COMPLAINT AND GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT WITHIN THIRTY DAYS<br><br>(Doc. 1) |

I.     Screening Order

　　　A.     Screening Requirement

Plaintiff, Robert Joseph Garcia, ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on December 27, 2005.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

///

1    "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited
2 exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534
3 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a
4 short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R.
5 Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the
6 plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court
7 may dismiss a complaint only if it is clear that no relief could be granted under any set of facts
8 that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a
9 plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support
10 the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and
11 unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting
12 Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171
13 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .
14 .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal
15 pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490
16 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply
17 essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin.,
18 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.
19 1982)).

20    B.    Plaintiff's Claims
21    The events at issue in the instant action allegedly occurred at the California Correctional
22 Institute in Corcoran, California, where plaintiff remains incarcerated and was incarcerated at all
23 times in question. Plaintiff names: Correctional Officers M. Lunes and Fugate; Correctional
24 Lieutenants A. Diaz and M.M. Miller; Former Chief Deputy Warden D. Stockman; Correctional
25 Counselor (I) A. Molina; Ombudsman Lonnie Jackson; Chief Inmate Appeals Nola Grannis;
26 Appeals Coordinators (II) V.J. Castillo and J. Buckley; Assistant Director, Internal Affairs Rick
27 Ehle; Validation Reviewers M. Ruff, Everett W. Fisher, and G. Williams; and Acting Warden
28 Lonnie Watson as defendants. Plaintiff alleges violation of his constitutional rights under the

First Amendment (retaliation for engaging in protected conduct), Fourth Amendment (unreasonable search and seizure), Eighth Amendment (for cruel and unusual punishment) and under the Fourteenth Amendment (for due process in connection with prison appeals/grievances, issuance of false rules violation reports, and infringing on his family relations).  Plaintiff seeks injunctive relief, and compensatory and punitive damages.

Despite being legible, plaintiff's claims are difficult to decipher at best due to plaintiff presenting his rendition of facts (which are not in chronological order) followed by causes of action (most of which contain only generalized conclusory statements of law, no factual allegations, and generalized references to the defendants).  Plaintiff's allegations appear to relate to an incident that occurred subsequent to wrongfully issued RVR's, which resulted in a nine month confinement in the SHU which plaintiff was able to get overturned/dismissed.  Plaintiff alleges that thereafter, various prison personnel generated false RVR's against him, violated his due process rights relative to the related hearings, wrongfully confined him in the SHU for an indeterminate length, and held review hearings relative to his indeterminate SHU confinement that were unconstitutional as to timing, procedure, and substance.  Based on the allegations in plaintiff's complaint, he has stated a few cognizable claims for relief under section 1983, and may be able to cure his pleading defects so as to adequately state additional claims in an amended complaint should he choose to do so.

The court will provide plaintiff with the opportunity to file an amended complaint that complies with Rule 8(a), names the individual defendant actors, and sets forth as to each defendant, what action that defendant took or failed to take and why.  In the subsections that follow, the court will provide plaintiff with the legal standards that, based on plaintiff's allegations, appear to be applicable.  Plaintiff should utilize the legal standards provided in this order for guidance when filing his amended complaint.  Plaintiff should also do his best to organize his claims setting forth the defendant actors, their allegedly wrongful acts, and how those actors and acts violated which of his constitutional rights.

        1.    Linkage

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted.) Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also be setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

While plaintiff identifies all of the named defendants, either in his statement of claim, or in his generalized conclusory allegations under his causes of action, he is advised that, if he chooses to file an amended complaint, he must connect or link his alleged constitutional deprivations to individual defendant actors.

    2.    First Amendment

        a.    Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff alleges that he was retaliated against for utilizing the prison grievance system. To that end, plaintiff appears to allege that the retaliatory actions that he has been subjected to include placement in the SHU/Ad Seg without due process and failure of prison personnel to

process his subsequent grievances.  As will be discussed below, plaintiff has stated a cognizable claim against Miller for his placement in the SHU/Ad Seg without due process.  However, plaintiff fails to identify which named defendants he feels are responsible for his subsequent grievances not being processed.  Plaintiff should address whether any of the defendants' retaliatory actions were intended to advance a legitimate correctional goal.  To that end, plaintiff fails to state a cognizable claim and will be given opportunity to amend.

    3.  <u>Eighth Amendment</u>

      a.  <u>Cruel and Unusual Punishment</u>

Plaintiff alleges that he was subjected to cruel and unusual punishment as his confinement to the SHU was disproportionate to the infraction(s) which were assessed against him.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  <u>Id</u>. (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  <u>Id</u>. at 9; <u>see</u> <u>also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines <u>de</u> <u>minimis</u> uses of force, not <u>de</u> <u>minimis</u> injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  <u>Id</u>. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition <u>de</u> <u>minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  <u>Id</u>. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Id</u>. at 7.  "In determining whether the use of force was wanton and unnecessary, it

6

may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id. An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

Administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) and Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life) (quotations omitted).

Plaintiff has failed to state any facts alleging: (1) the use of physical force against him; (2) whether any physical force was allegedly applied maliciously and sadistically to cause harm; and (3) what if any injury plaintiff sustained as a result of his allegation(s) of excessive force being used against him. Plaintiff has not alleged specific action(s) against specific defendant(s) so as to support claims against any of the named defendants for use of excessive force against him and/or any failure to intercede on his behalf.

The only allegation plaintiff makes in this regard is that he was subjected to cruel and unusual punishment because his confinement in Ad. Seg/the SHU was disproportionate to the infraction(s) he was charged with. Confinement in Ad.Seg/the SHU is within the range of confinement normally expected by inmates in relation to ordinary incidents of prison life and thus, plaintiff's confinement therein does not give rise to a cognizable claim for a constitutional deprivation of rights. The claim is dismissed with leave to amend.

        4.        Fourteenth Amendment

                a.        Inmate Appeals Process & Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of

action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Thus, any claims that plaintiff attempts to make against prison personnel for their efforts in making decisions/reviewing his inmate appeals/grievances do not state cognizable claims.

However, when a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff v. McDonnell, 418 U.S. 539, 563-70 (9th Cir. 1974); see also Superintendent v. Hill 472 U.S. 445, 454 (1985); Neal v. Shimoda, 131 F.3d 818, 830-31 (9th Cir. 1997); Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994); McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir. 1986).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.) However, the "some evidence" standard does not apply to original rules violation report where a prisoner alleges the report is false. Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).

Plaintiff's allegations contain approximately five instances that might be construed as attempting to state claims of violation of his rights to due process relating to disciplinary hearings – some are cognizable, and some are not.

(1) Plaintiff alleges that on November 18, 2004, defendant Miller failed to provide him with adequate notice and also failed to disclose evidence to be used against plaintiff in a sham hearing wherein it was determined that plaintiff would be placed in Ad Seg. On that date, apparently Miller went to plaintiff's cell when plaintiff was not present and slipped a copy of his CDC-114D placement order into the side of plaintiff's cell door. Doc. 1, pp. 17-18. Thus, it appears plaintiff has stated a cognizable claim against Miller.

9

    (2)    Plaintiff states that in November of 2005 "prison officials" ordered that plaintiff be placed in Ad Seg without adequate notice and without disclosing the evidence used against him. Doc. 1, pg. 10.  However, as to this placement in Ad Seg plaintiff fails to identify which of the named defendants he feels were responsible for this placement in Ad Seg.  Plaintiff also fails to state any facts to address the second and third <u>Wolf</u> elements.  Thus, plaintiff has failed to state a cognizable claim on this placement in Ad Seg.

    (3)    Plaintiff alleges that his placement in Ad Seg on November 17, 2004 was reviewed on January 14, 2005 by Lunes and Garcia.  Doc. 1, pg. 13.  As phrased, the court is unable to tell whether plaintiff was coincidentally placed in Ad Seg on November 17, 2004 and again on that same date in 2005, or, plaintiff if has confused the year and/or facts relative to his placement(s) in Ad Seg.  If plaintiff was confined in Ad Seg on November 17, 2004, and the first review of this placement was not conducted until January 14, 2005, then plaintiff has stated a claim against defendants Lunes and Garcia for failure to conduct the review in a timely manner.  See <u>Hewitt v. Helms</u>, 459 U.S. 460, 477 (1983) (wherein the Supreme Court stated that five days is a reasonable time for the post Ad Seg placement review).  However, if the second review of his placement in Ad Seg occurred on January 14, 2005, it would have probably been timely.  Unfortunately, due to the date discrepancies as noted, plaintiff's claims are not cognizable at this time.  The court will provide plaintiff with opportunity to clarify/correct the dates of his confinement so as to provide the defendant(s) with appropriate notice of his claims against them.

    (4)    Plaintiff also alleges that on May 23, 2005 he was placed in Ad Seg without adequate notice and without being assigned a staff assistant.  He further alleges that on May 24, 2005, "prison officials" issued his Ad Seg placement order without: (1) assigning plaintiff a staff assistant; (2) allowing plaintiff the right to call witnesses or submit evidence; and (3) without allowing plaintiff adequate

|   |   |   |
|---|---|---|
| 1 |  | opportunity to request additional time to prepare his defense. Doc. 1, pp 15-16. |
| 2 |  | However, plaintiff fails to indicate which defendants he feels were responsible for |
| 3 |  | this denial of his due process rights. Therefore, this claim is not cognizable at this |
| 4 |  | time and plaintiff will be given opportunity to amend. |
| 5 | (5) | Plaintiff further alleges that he has filed inmate appeals that were removed and/or |
| 6 |  | disposed of by "officers involved in the retaliatory scheme" as he has filed five |
| 7 |  | grievances – not one of which has been processed. Doc. 1, pp. 9-10. As to these |
| 8 |  | actions, plaintiff has failed to indicate which named defendants he alleges |
| 9 |  | engaged in removing/disposing of his appeals/grievances, when such activities |
| 10 |  | occurred, and what, if any, liberty interest was violated thereby. Thus, this claim |
| 11 |  | is not cognizable at this time. |

       5.    Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65 (internal quotations

and citations omitted).  As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Plaintiff alleges facts supporting the existence of a conspiracy between all fifteen named defendants, in retaliation for plaintiff's use of the prison grievance system, to deprive plaintiff of his constitutional rights to due process in the processing of his appeals/grievances, and in the filing and processing of RVR's so as to place plaintiff in Ad Seg/SHU confinement.  Doc. 1, pp. 32-34.  Thus, plaintiff has stated a cognizable claim for conspiracy between all fifteen named defendants.

### 6.   Access to the Courts

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  The right is limited to direct criminal appeals, habeas petitions, and civil rights actions.  Id. at 354.  Claims for denial of, or interference with, access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002).  To prevail on his claim, plaintiff must show that he suffered an actual injury by being shut out of court.  Id. at 415; Lewis, 518 at 351.

Plaintiff appears to claim that he filed a writ of habeas corpus on the alleged grounds that he had "an absolute right to file grievances" and to have those grievances processed and acted upon, and that Corcoran Prison Administrators were required to follow departmental regulations governing the use of information obtained from confidential sources.  This writ was denied as not stating a cognizable claim for relief.  Plaintiff requested review by the Appellate Court which was denied.  Plaintiff requested review by the California Supreme Court (apparently plaintiff advised that this request was untimely due to being moved from one Ad Seg to another such that plaintiff had difficulty obtaining assistance with his legal work).  However, the California Supreme Court also declined to review plaintiff's writ of habeas corpus.  Doc. 1, pp 14-15.

Rule 4 of the Rules Governing § 2254 cases requires the Court to make a preliminary review of each petition for writ of habeas corpus.  The Court must dismiss a petition "[i]f it

1  plainly appears from the face of the petition . . . that the petition is not entitled to relief." Rule 4
2  of the Rules Governing 2254 Cases; see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir.
3  1990).
4        A federal court may only grant a petition for writ of habeas corpus if the petitioner can
5  show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a). A habeas
6  corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his
7  confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez,
8  411 U.S. 475, 485 (1973); Advisory Committee Notes to Rule 1 of the Rules Governing Section
9  2254 Cases.
10       Thus, based on plaintiff's allegations, his writ of habeas corpus was without merit since
11 he was not challenging his confinement or the length or duration thereof as violating the
12 Constitution. Thus, plaintiff fails to state a cognizable claim for interference with his access to
13 the courts.
14              7.    Fourteenth Amendment
15       Plaintiff's fourth cause of action alleges violation of his "right to familial relationship
16 under the Fourteenth Amendment."
17       "It is well established that a parent has a "fundamental liberty interest" in "the
18 companionship and society of his or her child" and that "[t]he state's interference with that liberty
19 interest without due process of law is remediable under [42 U.S.C. § ]1983." Kelson v. City of
20 Springfield 767 F.2d 651, 654-55 (9th Cir. 1985) (citing Santosky v. Kramer 455 U.S. 745, 753
21 (1982) "[T]his constitutional interest in familial companionship and society logically extends to
22 protect children from unwarranted state interference with their relationships with their parents."
23 Smith v. City of Fontana 818 f.2d 1411, 1418 (9th Cir. 1987) overruled on other grounds by
24 Hodges-Durgin v. de la Vina 199 F.3d 1037 (9th Cir. 1999). Moreover, "the First Amendment
25 protects those relationships, including family relationships, that presuppose 'deep attachments
26 and commitments to the necessarily few other individuals with whom one shares not only a
27 special community of thoughts, experiences, and beliefs but also distinctively personal aspects of
28 one's life.'" Board of Dir. v. Rotary Club 481 U.S. 537, 545 (1987) (quoting Roberts v. United

States Jaycees, 468 U.S. 609, 619-20 (1984); see also Conti v. City of Fremont, 919 F.2d 1385, 1388-1389 (9th Cir. 1990)." Lee v. City of Los Angeles 250 F.3d 668, 685 (9th Cir. 2001).

Plaintiff alleges that his familial relationship(s) have been "violated by the name (sic) defendants herein who failed to train, supervise, and discipline their employees and the defendant correctional officers who deliberately intentionally and without penological justification engaged in or turned a blind eye to the retaliation scheme against petitioner." Doc. 1, pp 37-38. This is the only comment in the entire forty page complaint that comments in any way on plaintiff's relationship with his family. Plaintiff fails to allege which actions, by which specific defendants caused an interference with his familial relations, and how the interference occurred. Thus, plaintiff has failed to state a cognizable claim for interference with his relationship with his family.

        8.     Supervisory Liability

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior.

When a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff appears to allege liability based on the individual actions of each of the named defendants. However, should plaintiff choose to file an amended complaint, he is reminded that

allegations based on the theory of respondeat superior are insufficient to state cognizable claims for deprivations of constitutional rights.

9.   State Law Claims

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Because plaintiff may be able to state a claims for relief under section 1983, the court reserves discretion to exercise supplemental jurisdiction over and to address plaintiff's state law claims after plaintiff files his amended complaint so as to allow plaintiff opportunity to state cognizable claims for relief under section 1983.

C.   Conclusion

Plaintiff's complaint states some claims upon which relief may be granted. The court will provide plaintiff with the opportunity to file an amended complaint to cure the defects identified herein if he wishes to do so.

In the event that plaintiff does wish to amend his complaint, plaintiff is advised Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be

sufficiently alleged.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the court in this order, or
   b. Notify the court in writing that he does not wish to file an amended complaint and wishes to proceed only on the claims identified by the court as viable/cognizable in this order; and
4. If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:   March 4, 2008**                    /s/ **Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE

16