JKM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

Robert Joseph Garcia,            )   No. CV 1-06-0167-JAT
        Plaintiff,      )
                         )   **ORDER**
vs.                              )
                         )
M.D. Lunes, et al.,              )
        Defendants.     )

Plaintiff Robert Joseph Garcia, who is confined in the California Correctional Institute in Corcoran, California, has filed a *pro se* Second Amended Complaint pursuant to 42 U.S.C. § 1983. (Doc. #29.) The Court will dismiss the Second Amended Complaint and this action.

**I.      Background.**

Plaintiff filed his original Complaint on December 27, 2005. (Doc. # 1.) On March 4, 2008, United States Magistrate Judge Gary S. Austin issued an Order dismissing the Complaint for failure to state a claim and giving Plaintiff an opportunity to file a first amended complaint to cure the many deficiencies identified in the Order. (Doc. # 18.) The Order also warned Plaintiff that any first amended complaint must comply with Rule 8 of the Federal Rules of Civil Procedure. (Doc. #18 at 3.) After Plaintiff filed a First Amended Complaint (Doc. #22), the case was reassigned to the undersigned judge. The Court dismissed the First Amended Complaint and provided Plaintiff with one final opportunity to file a cognizable amended complaint. (Doc. #25.)

**II.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against

1  a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C.
2  § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised
3  claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
4  be granted, or that seek monetary relief from a defendant who is immune from such relief.
5  28 U.S.C. § 1915A(b)(1), (2).

6      A pleading must contain a "short and plain statement of the claim *showing* that the
7  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does
8  not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
9  unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
10 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
11 statements, do not suffice." Id.

12     "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
13 claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,
14 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content
15 that allows the court to draw the reasonable inference that the defendant is liable for the
16 misconduct alleged." Id. "Determining whether a complaint states a plausible claim for
17 relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
18 experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual
19 allegations may be consistent with a constitutional claim, a court must assess whether there
20 are other "more likely explanations" for a defendant's conduct. Id. at 1951.

21 **III.   Second Amended Complaint**

22     As the Court previously informed Plaintiff, all causes of action alleged in his prior
23 complaints are waived if they are not alleged in his Second Amended Complaint. See Hal
24 Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990) ("an amended
25 pleading supersedes the original"); King v. Atiyeh, 814 F.2d 565 (9th Cir. 1987).
26 Accordingly, the Court will consider only those claims specifically asserted in Plaintiff's
27 Second Amended Complaint with respect to only those Defendants specifically named in the
28 Second Amended Complaint.

1  Plaintiff sues the following Defendants: (1) Institutional Gang Investigator M. Lunes;
2  (2) Correctional Officer D. Fugate; (3) Correctional Officer T. Cogdill; (4) Correctional
3  Captain M.M. Miller; (5) Appeals Coordinator V.J. Castillo; (6) Correctional Counselor II
4  L. Smart-Schuman; (7) Correctional Captain N. Dill Jr.; (8) Correctional Captain A. Diaz;
5  (9) Correctional Lieutenant J. Rivas; (10) Institutional Gang Investigator J.C. Garcia; (11)
6  Gang Validation Reviewer M. Ruff; (12) Gang Validation Reviewer Everett W. Fisher; and
7  (13) Gang Validation Reviewer G. Williams.

8  Plaintiff asserts ten counts based on events that occurred between May 29, 1996 and
9  September 6, 2005. Plaintiff seeks monetary damages and injunctive relief. Notwithstanding
10 a second opportunity to clarify his claims for relief, Plaintiff has again failed to state a
11 cognizable claim for relief on any of his counts.

12 **A.  Count I**

13 In Count I, Plaintiff alleges that on May 29, 1996, Defendant Smart-Schuman placed
14 false, unreliable, and uncorroborated information obtained from a confidential informant in
15 Plaintiff's central file. Plaintiff alleges that this information was used to retain him in the
16 Security Housing Unit (SHU). Plaintiff further alleges that the information remained in his
17 central file until September 10, 2001. Plaintiff claims that the use of the information violated
18 his constitutional right to procedural due process. The Court will not consider the merits of
19 Count I because it is barred by the statute of limitations.

20 In the absence of waiver, the Court may raise the defense of statute of limitations *sua*
21 *sponte*. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764,
22 788 (9th Cir. 2000); see also Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003)
23 (upholding *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B) of prisoner's time-barred
24 complaint). In a § 1983 action, the applicable statute of limitations is the forum state's
25 statute of limitations for personal injury actions. Action Apartment Ass'n, Inc. v. Santa
26 Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007).

27 Effective January 1, 2003, the California statute of limitations for personal injury
28 actions was extended from one year to two years. Maldonado v. Harris, 370 F.3d 945, 954-

- 3 -

55 (9th Cir. 2004). The new two year statute of limitations, however, does not apply retroactively. Id. Accordingly, a one year statute of limitations applies to actions that accrued before January 1, 2003, and a two year statute of limitations applies to actions that accrued thereafter. "Federal law determines when a civil rights claim accrues." Id. "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

The law of the forum state governs tolling. Under California law, the statute of limitations for prisoners serving less than a life sentence is tolled for two years. Cal. Civ. Proc. Code § 352.1(a); Johnson v. State of California, 207 F.3d 650, 654 (9th Cir. 2000). Accordingly, the effective statute of limitations for most prisoners is three years for claims that accrued before January 1, 2003 (one year limitations period plus two year statutory tolling), and four years for claims that accrued thereafter (two year limitations period plus two years statutory tolling).

At the latest, Plaintiff knew or had reason to know that Defendant Smart-Schuman placed allegedly false information in his central file on September 10, 2001 when his challenge to the information was successful. Since Count I accrued before January 1, 2003, the claim is barred if it was filed after September 10, 2004 (one year statute of limitations plus two years tolling from September 10, 2001). Plaintiff's original Complaint was filed on December 27, 2005 — more than 15 months after the statute of limitations expired. (Doc. #1.) Accordingly, Count I will be dismissed as barred by the statute of limitations.

**B.   Count II**

In Count II, Plaintiff alleges that Defendants Lunes and Fugate agreed to file false CDC-128-B[1] reports against him in retaliation for "successfully challenging other [confidential informant] information." Plaintiff alleges that the CDC-128 reports issued by Defendant Lunes on April 13, 2004 and April 20, 2004 were used to place and retain him in

---

[1] A CDC 128-B is "a general form/chrono used to document miscellaneous information regarding inmates." Castro v. Terhune, No. 98-4877-WHA, 2010 WL 234910, *2 (N.D. Cal. Jan. 14, 2010).

- 4 -

SHU.[2] Plaintiff claims that the retaliatory conduct by Defendants Lunes and Fugate violated his Fourteenth Amendment rights to due process and equal protection. Count II fails to state a claim upon which relief can be granted.

Because Plaintiff's retaliation claim may be brought under the First Amendment, Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005), it is not properly brought either as a due process claim or an equal protection claim, see Doe ex rel. Doe v. Hawaii Dep't of Educ., 334 F.3d 906 (9th Cir. 2003) (§ 1983 claims should be analyzed under more specific constitutional provisions rather than generalized notions of due process). And, in any event, Plaintiff fails to allege the basic elements of either a due process claim or an equal protection claim in Count II. Construing Plaintiff's Second Amended Complaint liberally, the Court will treat Count II as a First Amendment retaliation claim.

To state a viable First Amendment retaliation claim, a prisoner must allege facts supporting five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) *because of* (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-58 (emphasis added). "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'" Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff has not alleged sufficient facts to give rise to a plausible inference that Defendants Lunes and Fugate had a retaliatory motive for issuing the CDC-128 reports against him. Although Plaintiff alleges that Defendants acted "in retaliation because Plaintiff had previously successfully challenged other C/I information provided by Corcoran prison

---

[2] Because the facts in Plaintiff's Second Amended Complaint are presented in scatter-shot manner, it is difficult to determine their chronology. It appears that the placement in SHU Plaintiff refers to in Count II may have taken place on November 17, 2004, but the specific date is not material to the Court's analysis.

officials," he does not identify the specific "successful challenge" to which he is referring, nor does he explain *how* Defendants Lunes and Fugate had any knowledge about his prior "successful challenge." Because a viable claim of First Amendment retaliation must include an allegation that a defendant took an adverse action against an inmate *because of* protected conduct, and there are no facts to support how Lunes or Fugate knew of the prior challenges, Plaintiff fails to state a retaliation claim against them. Plaintiff's threadbare and conclusory assertion that Defendants Lunes and Fugate retaliated against him does not suffice to state a plausible First Amendment retaliation claim against them. See Iqbal, 129 S. Ct. at 1937.

### C. Count III

In Count III, Plaintiff alleges that Defendants Miller and Dill failed to conduct a proper "CDC-114-A[3] administrative segregation placement hearing." Plaintiff alleges that on November 17, 2004, Defendant Miller gave Plaintiff a completed CDC-114 "lock up order"[4] that had been signed and post-dated by Defendants Miller and Dill. Plaintiff claims that the failure to give him a "CDC-114 captain hearing" deprived him of the benefit of "statewide departmental procedural safe guards." Plaintiff also claims that his due process rights were violated because he did not receive sufficient notice of the charges against him and was unable to prepare witnesses or present evidence.

In analyzing a due process claim, the Court must first decide whether the plaintiff was deprived of a constitutionally protected liberty interest, and, if so, whether he was denied any constitutionally required procedural safeguard. Liberty interests which entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate

---

[3] A "CDC 114-A" is an "Inmate Segregation Record" that "is used to record individual inmates' minute daily activities while housed in administrative segregation." Castro, 2010 WL 234910 at *2.

[4] A "CDC 114-D" is an "Order and Hearing for Placement in Segregated Housing" form used "to document an inmate's placement in segregated housing." Id.

- 6 -

1  in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484
2  (citations omitted).  The factual inquiry into whether a state action imposed an "atypical and
3  significant hardship" involves the consideration of three "guideposts": "1) whether the
4  challenged condition 'mirrored those conditions imposed upon inmates in administrative
5  segregation and protective custody,' and thus comported with the prison's discretionary
6  authority; 2) the duration of the condition, and the degree of restraint imposed; and 3)
7  whether the state's action will invariably affect the duration of the prisoner's sentence."
8  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (quoting Sandin, 515 U.S. at 486-87).

9  Plaintiff does not allege that the conduct of Defendants Miller and Dill resulted in his
10 placement in conditions of confinement that were significantly different than the ordinary
11 incidents of prison life.  Nor does he allege that Defendants' conduct necessarily altered the
12 duration of his prison sentence.  Although Plaintiff alleges generally that he was deprived of
13 "statewide departmental procedural safe guards" which must be provided when a "prisoner
14 is held in segregation for prolonged or indefinite periods," he does not allege that
15 Defendant's conduct actually caused him to be confined in a significant and atypical degree
16 of restraint for an excessive duration.  Because Plaintiff has failed to allege that Defendants
17 Miller and Dill deprived him of a constitutionally protected liberty interest, he has failed to
18 state a cognizable due process claim and Count III must be dismissed.

19     **D.     Count IV**

20 In Count IV, Plaintiff alleges that Defendant Dill violated statewide departmental
21 procedural policies by signing Plaintiff's November 18, 2004 CDC 114 order for placement
22 in administrative segregation and by participating as a member of the Institutional
23 Classification Committee (ICC) at his November 24, 2004 hearing.  Plaintiff alleges that the
24 November 24, 2004 hearing resulted in a decision to retain him in administrative segregation
25 for ninety days pending an Internal Gang Investigation.  Plaintiff alleges that Defendant
26 Dill's failure to follow departmental policy violated his constitutional right to due process.
27 Count IV fails to state a cognizable claim for relief because violations of state prison
28 regulations do not rise to the level of a constitutional violation. Sandin v. Conner, 515 U.S.

1  472, 482 (1995) (finding no constitutionally protected liberty interest in prison regulations
2  phrased in mandatory terms); Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989) (a
3  prison's failure to follow its own guidelines regarding hearings does not alone constitute
4  denial of due process); Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981) (violations of
5  prison rules or procedures alone do not state federal claims and are not cognizable under
6  § 1983). Count IV also fails to state a cognizable claim because Plaintiff's confinement in
7  SHU under administrative segregation pending an internal investigation does not give rise
8  to an atypical and significant hardship in relation to the ordinary incidents of prison life. See
9  Richardson v. Runnels, 594 F.3d 666, 672-73 (9th Cir. 2010) (administrative segregation for
10 two weeks in SHU pending a gang investigation is not a deprivation protected liberty
11 interest); Resnick v. Hayes, 213 F.3d 443, 447-49 (9th Cir. 2000) (prisoner's retention in
12 SHU for seventy days pending a disciplinary hearing did not give rise to a liberty interest
13 protected by the Due Process Clause). Accordingly, Count IV must be dismissed for failure
14 to state a cognizable claim for relief.

15     **E.    Count V**

16     In Count V, Plaintiff claims that Defendant Diaz violated statewide departmental
17 procedural policies at an April 25, 2005 "CDC 114 Captains Review" hearing by failing to
18 assign Plaintiff an investigative employee, denying his request for additional time to prepare,
19 and denying him the opportunity to collect witness statements. Defendant Diaz's conduct
20 apparently resulted in Plaintiff's retention in administrative segregation for an unspecified
21 period of time.

22     As stated in the discussion of Count IV, violations of state policy do not rise to the
23 level of a constitutional violation. And because Plaintiff does not allege that he was
24 subjected to a significant or atypical hardship as a consequence of Defendant Diaz's conduct,
25 he has failed to state a cognizable claim under for violation of his constitutional due process
26 rights. Accordingly, Count V must be dismissed.

27 /////
28 /////

### F.     Count VI

In Count VI, Plaintiff alleges that Defendant Rivas failed to resolve his "602[5] within [the] appeal time limit set by statewide regulations." Plaintiff also alleges that Defendant Rivas's May 4, 2005 decision failed to address Plaintiff's claims that his due process rights were violated by Defendant Miller.

As stated in the discussion of Count IV, violations of state policy do not rise to the level of a constitutional violation. And because Plaintiff does not allege that he was subjected to a significant or atypical hardship as a consequence of Defendant Rivas's conduct, he has failed to state a claim under for violation of his constitutional due process rights. Accordingly, Count VI must be dismissed.

### G.     Count VII

Plaintiff alleges that on September 6, 2005, Defendant Cogdill wrote a false CDC-128-B report at Defendant Lunes's direction with the knowledge that other inmates would see it, thereby threatening Plaintiff's safety. According to Plaintiff, the report expressed concerns about Plaintiff's mental health and opined that Plaintiff "has homosexual tendencies that may become predatory towards staff and inmates." Plaintiff claims that this conduct presented a threat to his safety in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

To state an Eighth Amendment claim of deliberate indifference to safety, a plaintiff must allege that a defendant, despite his knowledge of a substantial risk of serious harm to the plaintiff, failed to take reasonable measures to abate the harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A supported allegation that a correctional official made statements intending to incite inmates to attack another inmate may state a claim under the Eighth Amendment. Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir.1989). Plaintiff, however, has failed to allege facts sufficient to support a constitutional claim under Valandingham. In Valandingham, the plaintiff alleged that two prison officials had conspired to label him

---

[5] A CDC 602 form, called an "Inmate/Parolee Appeal Form," is used by prisoners "to appeal any policy, action, or decision." Castro, 2010 WL 234910 at *2.

- 9 -

as a snitch with the intent of having him killed. Id. at 1138.  The plaintiff in Valandingham also alleged in his complaint that on a specific date, "he was approached by fellow prisoners and threatened with harm because [the defendant prison officials] had told other inmates in the law library that Valandingham was a snitch." Id.  In contrast, Plaintiff does not allege that other inmates ever learned of the contents of the CDC-128-B report.

Although Plaintiff alleges that Defendant Lunes told him "wait 'till the fellas in the SHU read your new chrono – you'll have some real problems then," he does not allege that either Defendant Lunes or Defendant Cogdill ever exposed the report to other inmates.  Nor does he allege that any other inmates ever learned of the September 6, 2005 report or that they ever had access to it.  The facts alleged by Plaintiff therefore do not give rise to a plausible inference that he was ever subjected to a substantial risk of serious harm.

At most, Plaintiff's allegations support a claim that Defendant Lunes threatened to let other inmates know the contents of the report.  But mere threats to expose plaintiff to a risk of harm are not enough.  The Ninth Circuit has concluded that it "trivializes the eighth amendment to believe that a threat constitutes a constitutional wrong." Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987); see also Corales v. Bennett, 567 F.3d 554, 564 (9th Cir. 2009).  The court found "no case that squarely holds a threat to do an act prohibited by the Constitution is equivalent to doing the act itself." Gaut, 810 F.2d at 925.  Because Plaintiff does not allege facts sufficient to support a plausible inference that Defendants Cogdill and Lunes ever subjected him to an actual risk of serious harm, he has failed to state a cognizable claim for relief under the Eighth Amendment.  Accordingly, Count VII must be dismissed.

**H.     Count VIII**

In Count VIII, Plaintiff alleges that Defendant Castillo denied his constitutional right to access to the courts by "impeding" his ability to exhaust his administrative remedies for more than three years.  Plaintiff alleges that he was unable to exhaust his administrative remedies until April of 2009 when a "Hanford Superior Court" ordered prison officials resolve his appeal. Plaintiff claims that because the Prison Litigation Reform Act requires exhaustion of prison administrative remedies as a prerequisite to filing a federal civil rights

1 complaint, Defendant Castillo "effectively deny [sic] plaintiff access to the courts."

2 Plaintiff does not allege any facts to explain exactly what Defendant Castillo did to
3 impede the grievance process. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (to
4 state a valid claim under § 1983, a plaintiff must allege that he suffered a specific injury as
5 a result of specific conduct of a defendant). Morever, because he does not allege that
6 Defendant Castillo caused him to suffer any "actual injury," his allegations do not give rise
7 to a cognizable claim for denial of access to the courts.

8 The right of meaningful access to the courts prohibits state officials from actively
9 interfering with an inmate's attempt to prepare or to file legal documents. Lewis v. Casey,
10 518 U.S. 343, 350 (1996). To have standing to assert a constitutional claim of denial of
11 access to the courts, a prisoner must have suffered an "actual injury." Id. at 349. An "actual
12 injury" is "actual prejudice with respect to contemplated or existing litigation, such as the
13 inability to meet a filing deadline or to present a claim." Id. at 348. To show actual injury
14 with respect to contemplated litigation, the plaintiff must demonstrate that the conduct of the
15 defendants prevented him from bringing to court a nonfrivolous claim that he wished to
16 present. Id. at 352-53. Plaintiff's allegations do not give rise to a plausible claim that
17 Defendant Castillo prevented him from bringing a claim in federal court.

18 It is true, as Plaintiff alleges, that the Prison Litigation Reform Act prohibits the
19 bringing of an action "with respect to prison conditions . . . by a prisoner . . . until such
20 administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But failure
21 to exhaust administrative remedies is an affirmative defense, Jones v. Bock, 549 U.S. 199,
22 216 (2007), which defendants must raise and prove before a prisoner's complaint may be
23 dismissed under § 1997e(a), Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).
24 Moreover, exhaustion of administrative remedies is excused if prison officials prevented the
25 plaintiff from filing or appealing grievances. Nunez v. Duncan, 591 F.3d 1217, 1224 (9th
26 Cir. 2010) (a prisoner's "failure to timely exhaust his administrative remedies is excused
27 [where] he took reasonable and appropriate steps to exhaust . . . his claim and was precluded
28 from exhausting, not through his own fault but by the Warden's mistake"). If Defendant

1  Castillo prevented Plaintiff from exhausting his administrative remedies, as Plaintiff alleges,
2  a federal action challenging the substance of the claims underlying his administrative appeals
3  would not have been barred by the Prison Litigation Reform Act.  Plaintiff's allegations
4  therefore do not give rise to a reasonable inference that Defendant Castillo prevented him
5  from bringing to court a non-frivolous claim.  Because Plaintiff has failed to allege a
6  plausible claim that he suffered an actual injury, Count VIII must be dismissed.

### I.     Count IX

In Count IX, Plaintiff alleges that he was placed in administrative segregation on November 17, 2004, based on an unreliable confidential informant report that should have been destroyed when a criminal case against him was dropped.  Plaintiff alleges that he was not allowed to present his views to the decision maker before he was placed in administrative segregation.  He further alleges that on January 13, 2005 and February 17, 2005 "IGI Security Squad officers authored additional memorandums addressing plaintiff's removal from GP and retention in Ad Seg."  Plaintiff asserts that Defendant Garcia "was involved in [the] investigation surrounding plaintiff's removal from general population."  Plaintiff also alleges that:

> when Defendant J.C. Garcia concluded [the] investigation on 2-17-05 and no tangible or credible information surfaced with regards to plaintiff being involved in criminal activity or with having safety concerns[,] plaintiff should have been released to GP. . . .  Plaintiff contends that Defendant J.C. Garcia had an obligation as a critical decision maker to refer plaintiff for release from punitive segregation.

Plaintiff claims that the "failure to follow procedural safeguards covering use of confidential information" violated his right to due process.

Plaintiff's specific factual allegations against Defendant Garcia are far too vague and conclusory to state a plausible federal claim for relief against him.  Moreover, as stated in the discussion of Count IV, because Plaintiff does not allege that he was subjected to a significant or atypical hardship as a consequence of Defendant Garcia's conduct, he has failed to state a claim under for violation of his constitutional due process rights.  Accordingly, Count IX must be dismissed.

**J.     Count X**

Count X is nothing more than a an eleven paragraph recapitulation of prior claims and, for the reasons stated above, it will be dismissed.

**IV.    Dismissal without Leave to Amend**

As no claim remains, the Court will dismiss the Second Amended Complaint and this action. Leave to amend need not be given if a complaint as amended is subject to dismissal. Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny or grant leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. See Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Failure to cure deficiencies by previous amendments is one of the factors to be considered in deciding whether justice requires granting leave to amend. Moore, 885 F.2d at 538. The Court has reviewed the Second Amended Complaint and finds that further amendment of Plaintiff's claims would be futile. The Court will therefore dismiss the Second Amended Complaint without leave to amend.

**IT IS ORDERED** that the Second Amended Complaint (Doc. #29) is **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

DATED this 30th day of March, 2010.

/s/ James A. Teilborg
James A. Teilborg
United States District Judge